IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| KATHERINE PAINTER, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:17cv00034 |
| | ) | |
| BLUE RIDGE REGIONAL JAIL AUTHORITY, | ) | |
| OFFICER TIMOTHY FARRAR, and | ) | |
| OFFICER PITTS, | ) | |
|     Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
BY THE BLUE RIDGE REGIONAL JAIL AUTHORITY**

Defendant Blue Ridge Regional Jail Authority, by counsel, submits this memorandum in support of its motion to dismiss this action by plaintiff Katherine Painter. It is respectfully submitted that the Complaint fails to state any claim against Blue Ridge Regional Jail Authority.

**ALLEGATIONS**

The Complaint allegations show that immediately upon plaintiff "call[ing] the Prison Rape Elimination Act ('PREA') hotline" and reporting that she had been assaulted to administrators for Blue Ridge Regional Jail Authority: (1) the plaintiff was transferred to a different facility, where she does not allege that she had any problems; (2) a criminal investigation was opened of the plaintiff's report of assault; and (3) Timothy Farrar was arrested the same day the police interviewed him.[1]

The Complaint shows no basis for considering Blue Ridge Regional Jail Authority to have done anything wrong.

The plaintiff nevertheless claims, pursuant to 42 U.S.C. § 1983, that her "constitutional

---
[1] Complaint ¶¶ 82-88.

right to be free from unlawful sexual harassment, abuse, and assault" and "cruel and unusual punishment while imprisoned at the Lynchburg Adult Detention Facility" were violated not just by Farrar, but also by the Blue Ridge Regional Jail Authority.[2]

"[P]leading hypothetically and in the alternative,"[3] plaintiff asserts a "COUNT II-§1983-*Monell*" claim against Blue Ridge Regional Jail Authority.[4] In an effort to pursue a claim against Blue Ridge Regional Jail Authority, however, plaintiff merely ticks off a list of boilerplate, formulaic conclusions, "[u]pon information and belief," that are devoid of facts to state any claim against the Authority.[5]

It is respectfully submitted that the facts the plaintiff alleges, as opposed to her conclusory assertions that are entitled to no weight even on a motion to dismiss, provide no basis for liability on the part of Blue Ridge Regional Jail Authority.

The Complaint alleges that on April 1, 2015, the plaintiff was sent to the Lynchburg Adult Detention Center "to serve time."[6] The Complaint alleges that defendant Farrar was a

---

[2]Complaint ¶¶ 112-13. The Complaint includes cryptic phrases referring to "related state law claims" (Complaint ¶ 6) and "supplemental jurisdiction over related state law claims" (*Id*. ¶ 7), but plaintiff has not included any state law claims in her Complaint, and the statute of limitations for any such state law claims has long passed. *See* Va. Code § 8.01-243.2; *Lucas v. Woody*, 287 Va. 354, 363, 756 S.E.2d 447, 451 (2014); *Gemaehlich v. Johnson*, 2013 WL 589234 **4-5 (W.D. Va. 2013), *aff'd*, 599 F. App'x 473, 476 (2014).

[3]Complaint p. 1 prefatory statement.

[4]Complaint p. 13 heading before ¶ 111.

[5]Complaint ¶ 117.

[6]Complaint ¶ 16. The plaintiff does not specify whether she had already been convicted when she was in the Lynchburg Adult Detention Center, or whether she was a pretrial detainee. In any event, "a pretrial detainee's due process rights are co-extensive with a convicted prisoner's Eighth Amendment rights." *Turner v. Kight*, 121 F. App'x 9, 13 (4th Cir. 2005), citing *Hill v.*

correctional officer who worked the night shift at the Lynchburg Adult Detention Center, operated by the Blue Ridge Regional Jail Authority.[7]

On April 24 and May 2, 2015, the Complaint alleges that Farrar engaged in sexual conduct with plaintiff that Farrar coerced.[8] "Approximately two days" later, Farrar "requested oral sex, which Plaintiff refused because she had spoken with her significant other and 'knew [she] didn't have to listen anymore.'"[9] The Complaint alleges that defendant Lynchburg Adult Detention Center correctional officer Pitts was also working the night of April 24, 2015, "seated at a nearby desk using a computer" when Farrar entered the plaintiff's cell and assaulted her.[10]

The Complaint alleges that, "After these assaults, Plaintiff feared reporting Farrar to his fellow Correctional Officer because she feared she would be transferred to another jail and retaliated against by Defendant Farrar's friends and family."[11]

The Complaint alleges that "[s]ometime between April 24, 2015 and May 7, 2015," the plaintiff asked a Lynchburg Adult Detention Center correctional officer "what she should do if she had 'a problem' with a guard," and the officer "told her that he did not want to be involved because he did not 'want to have to come to court.'"[12]

---

*Nicodemus*, 979 F.2d 987, 990-92 (4th Cir. 1992).

[7] Complaint ¶ 11.

[8] Complaint ¶¶ 30-39, 55-60, 101.

[9] Complaint ¶¶ 67-68 (alteration in original).

[10] Complaint ¶ 42.

[11] Complaint ¶ 73.

[12] Complaint ¶ 75.

3

"Sometime between May 2, 2015 and May 10, 2015, Plaintiff's mother and significant other visited Plaintiff in the Lynchburg Adult Detention Facility, and Plaintiff reported her sexual assaults to them," the Complaint alleges.[13] The Complaint alleges that the plaintiff also "wrote a letter to fellow inmate Meredith Lee, referring to the assaults she experienced."[14]

The Complaint alleges that, "On May 5, 2015, a Sergeant Polk sent a memo addressed to 'All Intake Officers,' stating that Sergeant Polk was aware that intake officers had been granting 'special privileges' to Plaintiff and holding 'long conversations' with her."[15] The Complaint alleges that on May 7, 2015, the plaintiff "made a written request to speak with a Lieutenant Rivers, the Internal Affairs Investigator for the Blue Ridge Regional Jail Authority," which a Lynchburg Adult Detention Center correctional officer Woody retrieved and brought to the intake desk. The Complaint alleges that Farrar "confronted Plaintiff, informing her that Defendant Woody [sic] did not want to turn the requests in to Lt. Rivers or send them up the chain of command."[16]

On Friday, "May 8, 2015, Plaintiff called the Prison Rape Elimination Act ("PREA") hotline and reported her sexual assaults."[17]

---

[13] Complaint ¶ 76.

[14] Complaint ¶ 70.

[15] Complaint ¶ 71.

[16] Complaint ¶¶ 77, 80. While this allegation refers to "Defendant Woody," the Complaint does not include such a defendant.

[17] Complaint ¶ 82. The PREA is a federal law passed to "establish a zero-tolerance standard for the incident of prison rape in prisons in the United States," 42 U.S.C. § 15602, for which the final rules adopting national standards became effective in 2012. *See* http://www.ojp.usdoj.gov/programs/pdfs/prea_final_rule.pdf. Blue Ridge Regional Jail

4

On Monday, "May 11th, 2015, after a meeting with administrators for Defendant Blue Ridge Regional Jail Authority at which Plaintiff described her sexual assault, Plaintiff was transferred to the Amherst Adult Detention Center," where plaintiff does not allege she had any problems.[18]

"After Plaintiff's reports of sexual assault, an investigation was opened by the City of Lynchburg Police Department and Blue Ridge Regional Jail Internal Affairs."[19]

The Complaint alleges that "[o]n May 13, 2015, Defendant Farrar" was interviewed by a City of Lynchburg Police Detective and "immediately placed under arrest for carnal knowledge

---

Authority has complied with PREA standards from the outset, including having a zero tolerance policy for all forms of sexual misconduct, incidents involving inmate-on-inmate sexual violence, and all forms of staff sexual misconduct/harassment toward inmates regardless of consensual status. *See* Blue Ridge Regional Jail Authority's official website: http://www.brrja.state.va.us/, selecting the link "About BRRJA," and selecting from the drop-down menu "Prison Rape Elimination Act." The annual reports of BRRJA and of each of its five facilities individually, pursuant to the PREA, dating back to 2012, are posted to BRRJA's website, as are the reports of the audits of its facilities by a Certified PREA auditor (including the report of the Certified PREA auditor who conducted the audit of the Lynchburg Adult Detention Center in 2015, on which the Lynchburg Adult Detention Center was found to have met or exceeded all applicable PREA standards). A print-out of that PREA page with the listed links to the annual reports is attached as Exhibit 1. "[A] court may take judicial notice of matters of public record in considering a motion to dismiss." *Lewis v. Newton*, 2015 WL 5603933 *1 (4th Cir. 2015) (affirming dismissal on the pleadings). *Accord Massey v. Ojaniit*, 759 F.3d 343, 347-48, 352-53 (4th Cir. 2014) ("matters of public record" among what is properly considered by a court on a motion to dismiss directed to the pleadings)*; Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (affirming dismissal and consideration in analyzing complaint's sufficiency information "publicly available on the official redistricting website of the Virginia Division of Legislative Services"; "[w]e may properly take judicial notice of this information in reviewing the dismissal of the complaint under Rule 12(b)(6)"), *cert. denied*, 544 U.S. 961 (2005).

[18]Complaint ¶ 83.

[19]Complaint ¶ 84.

of a prisoner."[20] The public records show that those events actually occurred on May 20, 2015, rather than May 13.[21]

The Complaint alleges that during his interview by the Police Detective, Farrar said that "he was aware of instances in the past at Blue Ridge Regional Jail Authority in which correctional officers had had sexual contact with inmates."[22] The Complaint alleges that there had previously been one complaint about Farrar from a female inmate, on December 23, 2014, with that inmate having allegedly complained that Farrar "asked her to unzip her jacket and to show Farrar the tattoo on her stomach, and that Defendant Farrar made a remark about the inmate 'flashing' him," and that Farrar said to that inmate that "she owed the jail a fee of $1.00, and that Farrar and the inmate could 'take it out in trade.'"[23]

Farrar was acquitted by a jury at trial with respect to the April 24, 2015 incident and the

---

[20]Complaint ¶ 88.

[21]The official website for Virginia's State Courts shows that Farrar was arrested on May 20, 2015 with respect to both the April 24 and the May 2015 incidents. A print-out of that information is attached as Exhibit 2, from the official website for Virginia's state courts, http://www.courts.state.va.us/, obtained by accessing the Lynchburg Circuit Court case status information, criminal division, searching Farrar's name, and selecting each charge to display case details. In addition, a certified copy of the arrest warrant for the April 24 incident showing arrest on May 20, 2015 is included in Exhibit 2. With respect to the May 2015 incident, the indictment was amended to reflect the date of that offense being changed from May 2, 2015 to May 6, 2015. A certified copy of the Lynchburg Circuit Court's Order amending the indictment in that regard is also included in Exhibit 2. *Egan v. Roanoke City Circuit Court*, 2012 WL 1456519 *1 n.1 (W.D. Va. 2012) ("Records from the Roanoke County Circuit Court are accessible online at http://www.courts.state.va.us. A federal court may take judicial notice of factual information located in postings on governmental websites in the United States"). *See also* decisions cited in n.17.

[22]Complaint ¶ 87.

[23]Complaint ¶ 90.

6

charge with respect to the May 2015 incident was dismissed, but his employment at the Lynchburg Adult Detention Center had ended immediately upon his arrest.[24]

The Complaint lists nothing but a scattershot of cryptic and vague conclusions – not shown by the facts alleged – in an effort to pursue a claim that Blue Ridge Regional Jail Authority should be held liable for purported "unconstitutional customs, practices, and/or policies[.]"[25]

It is respectfully submitted that plaintiff's allegations show no basis for a claim against the Blue Ridge Regional Jail Authority, and this action should be dismissed as against the Authority.

## ARGUMENT

### I. Standards On Motion To Dismiss

As the United States Supreme Court has stressed, "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do'."*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim against a particular defendant cannot survive a motion to dismiss unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678.

A claim that is not supported by "[f]actual allegations . . . enough to raise a right to relief above the speculative level" cannot survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550

---

[24]*See* Final Disposition information on the print-outs from the Virginia State Courts official website, as well as a certified copy of the jury verdict, in Exhibit A.

[25]Complaint ¶ 117.

7

U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief"'." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 557.

In recent years, the United States Supreme Court has stressed the imperative of courts conducting a penetrating evaluation of complaints at the outset, reflecting the "policy that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (discussing "the high costs of frivolous litigation" and "the recognized problems created by 'strike suits'" in recent years, for the Supreme Court's emphasis on early evaluation of complaints).

Indeed, the Complaint allegations "upon information and belief" with respect to the Blue Ridge Regional Jail Authority are especially insufficient under the prevailing pleading standards. "[P]laintiff's allegations upon 'information and belief' [are] 'exactly the type of pleading that *Iqbal* and *Twombly* sought to foreclose'." *Gemaehlich v. Johnson*, 2013 WL 589234 *3 (W.D. Va. 2013) (dismissing claim), *aff'd*, 599 F. App'x 473 (4th Cir. 2014), *citing Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 619–20 (E.D. Va. 2009).

As the United States Supreme Court emphasized in *Iqbal*, "the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process," and "'[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management'[.]" 556 U.S. at 684-85.

It is respectfully submitted that plaintiff fails to state a claim against Blue Ridge Regional Jail Authority.

8

## II. Plaintiff Fails To State A Claim Against Blue Ridge Regional Jail Authority

Plaintiff fails to state a claim against the Blue Ridge Regional Jail Authority, and it respectfully submitted that this action should be dismissed for the independently-sufficient reasons set forth below.

### a. Blue Ridge Regional Jail Authority Is Not A "Person" Subject to § 1983 Liability

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Numerous decisions have held that Blue Ridge Regional Jail Authority is not a "person" subject to liability under § 1983. *Newman v. Blue Ridge Reg'l Jail Auth.*, 2009 WL 1468807 *1 (W.D. Va. 2009) (plaintiff "fails to state a claim against the Lynchburg Adult Detention Center and Blue Ridge Regional Jail Authority because these entities are not persons subject to suit under § 1983"); *Dammones v. Lynchburg Adult Detention Center*, 2012 WL 6566684 *1 (W.D. Va. 2012) ("Neither the Jail nor a group of person, like the Blue Ridge Regional Jail Authorities, is a 'person' subject to 42 U.S.C. § 1983"); *Scott v. Blue Ridge Reg'l Auth.*, 2005 WL 2429759 *1 (W.D. Va. 2005) (the Blue Ridge Regional Jail Authority is not subject to suit under § 1983, dismissing the claims against it), *appeal dismissed*, 201 F. App'x (4th Cir. 2006); *Nowlin v. Harris*, 2006 WL 2434965 *2 (W.D. Va. 2006) (plaintiff has no basis for a claim against Blue Ridge Regional Jail Authority, which is not a "person" subject to suit under 42 U.S.C. § 1983); *Sprinkle v. Blue Ridge Jail Auth.*, 2006 WL 1867332 *1 (W.D. Va. June 30, 2006) ("Because the Jail Authority is not a 'person' amenable to suit under § 1983, any claims against the Jail

9

Authority must be dismissed").[26]

It is respectfully submitted that the Blue Ridge Regional Jail Authority should therefore be dismissed as a defendant in this action.

### b. Plaintiff's Allegations Do Not Show "§1983-*Monell*" Liability On The Part Of Blue Ridge Regional Jail Authority

Even if the Blue Ridge Regional Jail Authority were considered to be a "person" subject to suit under 42 U.S.C. § 1983, plaintiff's allegations do not show a basis for "§ 1983-*Monell*" liability such as plaintiff asserts in Count II of her Complaint.

The law is well-settled that there is no basis for vicarious liability under 42 U.S.C. § 1983 for the alleged violations of others. Thus, while in the caption of the Complaint plaintiff refers to Farrar and Pitts each as "an Agent of the Blue Ridge Jail Authority," and plaintiff alleges that Farrar and Pitts were employed by Blue Ridge Regional Jail Authority, Complaint ¶¶ 114, 115, that provides no basis for liability on the part of Blue Ridge Regional Jail Authority under § 1983.

As the United States Court of Appeals for the Fourth Circuit held in *Ross v. Reed*, 719 F.2d 689, 698 (4th Cir. 1983), "*respondeat superior* liability has no place in § 1983 jurisprudence."

---

[26]*Accord Bowen v. New River Valley Reg'l Jail*, 2006 WL 3327622 *1, 3 (W.D. Va. 2006) (granting motion to dismiss of New River Valley Regional Jail Authority because it "is not a 'person' for purposes of § 1983"); *Stilwell v. Southwest Virginia Reg'l Jail Auth.*, 2006 WL 2524076 *1 n.1 (W.D. Va. 2006) ("Southwest Regional Jail Authority is not a 'person' and therefore, is not a proper defendant in a § 1983 action").

To the extent this basis for dismissal were considered to implicate the subject matter jurisdiction of this federal court, the Blue Ridge Regional Jail Authority has included that the motion to dismiss is made pursuant to Rule 12 (b)(1) as well as Rule 12(b)(6).

10

> Under § 1983, governmental entities are not liable under the theory of *respondeat superior* for unconstitutional conduct by their employees. *See Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

*Lavender v. City of Roanoke Sheriff's Office*, 826 F. Supp. 2d 928, 934 (W.D. Va. 2011).

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," because it is only when the "official policy[] inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694. The "official policy" must be "the moving force" causing the alleged constitutional violation. *Id*.

With respect to plaintiff's claim against the Blue Ridge Regional Jail Authority, plaintiff's Complaint takes the everything-and-the-kitchen-sink conclusory pleading approach – with a myriad of speculative, vague, and conclusory alternative variations referred to as "unconstitutional customs, practices, and/or policies," or "an expressly adopted official policy or a longstanding practice or custom," or "actual and/or constructive knowledge of the deficient policies, practices and customs alleged,"[27] in an apparent effort to cover all bases for any conceivable sort of potential municipal liability.

The scattershot of conclusory assertions and buzzwords plaintiff invokes does not mask that the actual *facts* alleged do not show a basis for a claim against Blue Ridge Regional Jail Authority. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Plaintiff's conclusions are not supported by factual allegations sufficient to make out any claim of municipal liability on the part of Blue Ridge Regional Jail Authority, however.

---

[27]Complaint ¶¶ 116-17, 119-20.

Peeling away the layers of conclusory allegations that "are not entitled to the assumption of truth," and examining what remains, as *Iqbal* instructs, shows no basis for holding the Blue Ridge Regional Jail Authority liable for the incidents of Farrar's alleged misconduct with the plaintiff in April and May 2015. Plaintiff does not allege that there was a specific written policy or policies, or the language of any such policy, that plaintiff claims violated her constitutional rights. Nor does plaintiff allege facts showing any unwritten policy or custom of Blue Ridge Regional Jail Authority that caused the alleged violation of her constitutional rights, nor that the alleged violation was caused by the conduct of a final policymaker.

> A policy is a "Course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercise of discretion in the operational details of government." A custom exists when the "persistent and widespread" practices of government officials are "so permanent and well-settled as to [have] the force of law."

*Lavender v. City of Roanoke Sheriff's Office*, 826 F. Supp. 2d at 935 n.4 (dismissing claims against sheriff's office) (internal citations omitted, other alterations in original).

Far from showing that Blue Ridge Regional Jail Authority had any "persistent or widespread" practice or any chosen policy that caused plaintiff's violation, plaintiff's allegations show that as soon as plaintiff made Blue Ridge Regional Jail Authority aware of the incidents, it took immediate action. Plaintiff was immediately transferred to another facility for her protection, the matter was investigated and turned over to law enforcement, and Farrar was prosecuted.

The only other incident to which the Complaint refers is an alleged incident in 2014 involving Farrar and a female inmate, in which Farrar allegedly asked the inmate to show him the tattoo on her stomach and make a remark about her "'flashing' him," and the inmate complained

12

that Farrar told her she "owed the jail a fee of $1.00, and that Farrar and the inmate could 'take it out in trade.'" The inmate is alleged to have said that she "felt [terrified' and 'vulnerable'." The Complaint does not allege that the other female inmate even had any physical contact with Farrar, or any other conduct similar to what plaintiff alleges with respect to her own incidents, or that the incident was substantiated upon investigation.

As the United States Court of Appeals for the Fourth Circuit has stated:

> [A] municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees. . . . [M]unicipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be a means by which particular unconstitutional conduct of its employees might have been averted.

*Milligan v. City of Newport News*, 743 F.2d 227, 229-30 (4th Cir. 1984) (affirming dismissal for failure to state a claim). *See also Godfrey v. Faulkner*, 2015 WL 273848 *4 (W.D. Va. 2015) ("[s]uch a 'formulaic recitation of the elements' is inadequate to support a § 1983 municipal liability claim"; a "[p]laintiff must identify 'numerous particular instances of unconstitutional conduct in order to establish a custom or practice,'" dismissing action); *Gemaehlich v. Johnson*, 2013 WL 589234 *3 (W.D. Va. 2013), *aff'd*, 599 F. App'x 473 (4th Cir. 2014) (allegations as to prior inmates having been injured or even died in the jail were nevertheless the "kind of threadbare recitals [that] do not 'show' prior instances of excessive force," and are not sufficient to show a "pervasive and unreasonable risk of constitutional injury," dismissing claims against sheriff); *Lavender v. City of Roanoke Sheriff's Office*, 826 F. Supp. 2d at 934 (the "pleadings are essentially boilerplate, devoid of specific facts" of deliberate indifference or tacit authorization of

13

a particular practice that led to the alleged violation of the plaintiff's constitutional rights).[28]

Plaintiff has not alleged facts showing that Blue Ridge Regional Jail Authority had any policy or custom on which to base municipal liability for what plaintiff alleges Farrar did.

"Furthermore, even where such a 'policy' of municipal inaction might be inferred, it must still be shown to have been the 'moving force of the constitutional violation' specifically charged in order to create municipal liability." *Milligan*, 743 F.2d at 30. Plaintiff's allegations also fail to satisfy this element of her municipal liability claim. Plaintiff alleges no facts showing that Blue Ridge Regional Jail was in any way the "moving force" of the alleged constitutionally violative conduct of Farrar.

As this Court has stated in a case in which a defendant employee of Pamunkey Jail confessed, pleaded guilty to, and was convicted of raping the plaintiff, and at least one other female inmate, as he was transporting the plaintiff from the Jail to the Fluvanna Womens' Correctional Center:

> Plaintiff alleges the existence of a policy or custom of transporting female inmates alone with male guards. There is no evidence of what the policy of the jail actually is, but for the purposes of this motion we assume that there is an explicit rule adopted after due deliberation permitting this practice. The Court finds a policy or custom of transporting female inmates alone with male guards is not unconstitutional, because the majority of men, and the majority of prison guards, are not rapists merely waiting for an opportunity to assault a woman. This is not to say that this policy is wise, or that a different policy would not have protected the Plaintiff's undeniable right to bodily integrity more effectively. But absent a showing that transportation by a male guard alone is tantamount to a sentence of rape for any women unfortunate enough to suffer it, the policy cannot be said to have *caused* the rape. Rather, the policy *failed to prevent* the rape, which is

---

[28]Plaintiff's allegations also are not sufficient even to show negligence on the part of Blue Ridge Regional Jail Authority. In any event, negligent conduct does not violate the Constitution and is insufficient to state a claim under 42 U.S.C. § 1983. *Daniels v. Williams*, 474 U.S. 327, 328, 332 (1986).

14

inadequate as a matter of law to support liability.

*Doe v. Cunningham*, 2006 WL 2819600 *2 (W.D. Va. 2006) (emphasis in original) ("[n]or does a mere oversight in policymaking, leaving gaps in which employees can violate citizen rights, result in liability").[29] *See also Carter v. Morris*, 164 F.3d 215, 218, 220 (4th Cir. 1999) ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee," and "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation"; "[n]or does this meager history of isolated incidents approach the 'widespread and permanent' practice necessary to establish municipal custom").

---

[29]*Doe v. Cunningham* was decided under the pleading standard that was subsequently rendered obsolete by *Twombly* and *Iqbal*. Thus, in light of the pleading standard then that dismissal should not be granted "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim," this Court allowed discovery "limited to the question of the prevalence of rape of inmates by guards at the Pamunkey jail," 2006 WL 2819600*2, before then entering summary judgment in favor of the Jail. *Doe v. Cunningham*, 2007 WL 990141 (W.D. Va. March 29, 2007). It is respectfully submitted that none of that action would have survived the pleadings stage as to the entity under the pleading standards that apply now. The "'no set of facts' language has been questioned, criticized, and explained away long enough," "has earned its retirement," and "is best forgotten[.]" *Twombly*, 550 U.S. at 562-63 (2007).

There is *no* "duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional . . . action into a substantial one[.]" *Id*. (ellipsis in original). *Accord McCleary–Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 587 (4th Cir. 2015) ("*Iqbal* and *Twombly* articulated a new requirement . . . rejecting a standard that would allow a complaint to 'survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery'," affirming dismissal), *cert. denied*, 136 S. Ct. 1162 (2016).

15

Nor do plaintiff's cryptic references to "[f]ailing to properly train correctional officers"[30] provide any basis for municipal liability on the part of the Blue Ridge Regional Jail Authority. In Virginia, criminal justice training academies, established pursuant to Virginia law, dictate the level and kind of training required for jail officers like those named as defendants in this action. *See, e.g.,* Va. Code § 15.2-1706 ("all jail officers . . . must be certified through the successful completion of training at an approved criminal justice training academy in order to remain eligible for appointment or employment"); *see similarly Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999) ("the State Department of Criminal Justice Services tells the Sheriff what he must do to train his employees"), *cert. denied*, 529 U.S. 1067 (2000). Plaintiff does not allege that the officers lacked that training, and no higher level of training is constitutionally required.

Furthermore, only where an alleged "failure to train reflects a 'deliberate' or 'conscious' choice" is there any potential for § 1983 liability. *Canton v. Harris*, 489 U.S. 378, 388 (1989) ("only where the failure to train amounts to deliberate indifference to the rights of person with whom the police come into contact"). As the United States Supreme Court discussed in *Canton v. Harris*, "[t]hat a particular officer may be unsatisfactorily trained" is not sufficient to fix liability for inadequate training, "[n]either will it suffice to prove that an injury [] could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." 489 U.S. at 390-91.

The standard for alleging a claim based on allegedly improper training is as high as it is for allegedly wrongful policies. *Revene v. Charles County Commissioners*, 882 F.2d 870, 874

---

[30]Complaint ¶ 117.

16

(4th Cir. 1989) (affirming dismissal of § 1983 claim against policymakers). Indeed, in *Westmoreland v. Brown*, the plaintiff inmate brought a claim under 42 U.S.C. § 1983 against defendants including policymakers, alleging that their policies had caused him to be harmed by a jail guard who had arranged for plaintiff to be attacked in jail. 883 F. Supp. 67, 69-70 (E.D. Va. 2005). In support of his claim, the plaintiff had even alleged in his complaint the exact number of assaults, on a per month basis, that had occurred at the jail where the plaintiff was incarcerated. *Id*. at 75-76. Nevertheless, the court concluded that such allegations did not rise to the level of "substantial risk of harm" nor knowledge on the part of the policymakers necessary to hold the policymakers liable, and the court dismissed the claim against defendants on the basis of the pleadings alone. *Id.* at 76.

The court in *Westmoreland v. Brown* further held that any causal nexus between the policies and the particular harm to the plaintiff was "far too attenuated to permit a recovery here." 883 F. Supp. at 76-77. As the court stated:

> [W]here a guard betrays his duty to protect the inmates under his charge and instead orchestrates a particular violent attack on one inmate, that attack could occur in a facility with ideal capacity and supervision because the mechanism in place to protect that inmate has been undermined. [Plaintiff's] complaint offers nothing beyond conclusory legal assertions that such a causal nexus exists in this case. This is legally insufficient to save his complaint . . . .

*Id*. at 77. *See also Gordon v. Kidd*, 971 F.2d 1087, 1097 (4th Cir. 1992) ("A plaintiff must identify a deficiency in the training program closely related to the injury complained of and must further show that the injury would have been avoided 'under a program that was not deficient in the identified respect'"); *Fisher v. Washington Metro Area Transit Authority*, 690 F.2d 1133, 1143 (4th Cir. 1982) (incidents that occur "by unauthorized subordinate conduct -- or by sheer

17

accident beyond the control of an official -- cannot be charged to [the defendant supervisor] under developed § 1983 doctrine").

It is respectfully submitted that even if the Blue Ridge Regional Jail Authority were considered an entity subject to suit for purposes of § 1983, plaintiff fails to state a claim against the Authority, and this action should be dismissed as against the Authority.

## CONCLUSION

Based upon the foregoing, Blue Ridge Regional Jail Authority respectfully submits that this action should be dismissed with prejudice as against the Authority, along with such other and further relief as is just, including an award of the attorney's fees and costs incurred in the defense of this action.

                Blue Ridge Regional Jail Authority

                By  s/ Carlene Booth Johnson
                      Counsel
                Carlene Booth Johnson VSB No. 36473
                Perry Law Firm
                A Professional Corporation
                262 Chellowe Road
                Dillwyn, Virginia 23936
                tel:  (434) 983-5005
                fax:  (434) 983-5021
                email: perrylawfirm@hughes.net

Certificate

I certify that on June 9, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

T. Vaden Warren, Jr., Esq.
The Warren Firm PLLC
516 Locust Ave.
Charlottesville, VA 22902

By s/ Carlene Booth Johnson
Counsel
Carlene Booth Johnson VSB No. 36473
Perry Law Firm
A Professional Corporation
262 Chellowe Road
Dillwyn, Virginia 23936
tel: (434) 983-5005
fax: (434) 983-5021
email: perrylawfirm@hughes.net

19