UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

---

| | |
|---|---|
| Katherine Painter; ) | |
|     Plaintiff, ) | |
| ) | |
| ) | No: 6:17-CV-00034 |
| v. ) | |
| ) | |
| ) | |
| Blue Ridge Regional Jail Authority; Corrections ) | |
| Officer Timothy Farrar, individually and as an ) | |
| Agent of the Blue Ridge Jail Authority; and ) | |
| Corrections Officer Pitts, individually and as an ) | |
| Agent of the Blue Ridge Jail Authority; ) | |
| ) | |
|     Defendants. ) | |

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT BLUE RIDGE REGIONAL AUTHORITY'S MOTION TO DISMISS**

Plaintiff, Katherine Painter, submits this memorandum in opposition to Defendant Blue Ridge Regional Authority's motion to dismiss.

## I.    Fact Statement

Defendant TIMOTHY FARRAR worked for the Blue Ridge Regional Jail Authority (hereinafter "BRRJA") at the Lynchburg Adult Detention Center intake department, on the night shift. Compl. ¶ 17. During that time, Plaintiff was placed on suicide watch by BRRJA. Compl. ¶ 19, 20, 24. Defendant FARRAR would withhold toilet tissue from Plaintiff unless she showed her body to him and would then, stand outside Plaintiff's cell to watch her use the toilet. Compl. ¶ 19-20, 24.

Plaintiff suffers from a gastrointestinal tract disorder and her jail file indicated that she required certain medications normally brought to her by nursing staff. Compl. ¶ 25, 26. On April 24, 2015, due to her disorder, Plaintiff was suffering and requested medication for her gastrointestinal distress. Compl. ¶ 28-29. Defendant FARRAR, who had access to her medical

file (and was not nursing staff) brought the medication to plaintiffs cell. Compl. ¶27, 30.

On April 24, 2015, Defendant FARRAR electronically opened Plaintiff's cell and entered. Electronic records from the BRRJA from the night of the incident indicate that Plaintiff's cell was open for over nine minutes. Compl. ¶ 41. Defendant FARRAR told Plaintiff that in order for her to get the medication, Plaintiff would have to perform oral sex on him. Compl. ¶ 31-32. Plaintiff initially refused but had no choice but to perform oral sex on Defendant FARRAR to get her medication. Compl. ¶ 35-36. While being forced to perform oral sex, Plaintiff gagged and became physically ill and was then given her medication. Compl. ¶ 35-37. Plaintiff was in pain and felt she had no choice because Defendant FARRAR could act with impunity. Compl. ¶ 39, 40. Jemarcus Butler, another inmate in a nearby cell, overheard the act, describing the sounds as "lip smacking". Compl. ¶ 49.

Defendant PITTS, another correctional officer working in intake at Lynchburg Adult Detention Center, was working on the night of the incident, and was seated at a nearby desk when the incident occured. Compl. ¶ 43. Defendant Pitts witnessed Defendant FARRAR open Plaintiff's cell door and enter Plaintiff's cell. Compl. ¶ 43. Mr. Butler witnessed Defendant PITTS turn his head towards Plaintiff's cell in response to sounds, consistent with sexual activity, coming from Plaintiff's cell, and then turn back to look at his computer. Compl. ¶ 49,45. Defendant PITTS witnessed Defendant FARRAR leave Plaintiff's cell nine minutes after he had entered and close the door to continue on his rounds. Compl. ¶46. Defendant PITTS made no attempt to investigate Defendant FARRAR's presence or activity in Plaintiff's cell nor the sounds coming out of Plaintiff's cell. Compl. ¶47-48.

On or about May 2, 2015, Plaintiff requested her gastrointestinal medication. Compl. ¶ 55. After Plaintiff's request, Defendant FARRAR entered Plaintiff's cell carrying a rag. Compl.

¶ 56. Defendant FARRAR told Plaintiff he would only give her the medication if she performed oral sex on him. Compl. ¶ 57. Plaintiff had had a dental procedure which required stitches inside her mouth and told Defendant Farrar that she could not. Compl. ¶ 58, 59. Defendant FARRAR forced Plaintiff over a bench and forced intercourse with Plaintiff at that time. Compl. ¶ 60, 61. Following the incident, a Sergeant Polk sent a memo addressed to "All Intake Officers," stating that Sergeant Polk was aware that intake officers had been granting "special privileges" to Plaintiff and holding "long conversations" with her. Compl. ¶ 72.

After the assaults, Plaintiff feared reporting FARRAR because she feared she would be transferred, retaliated against, and that no one would believe her over Defendant Farrar. Compl. ¶ 74-75. Following the incidents, Plaintiff asked Correctional Officer Smith, what she should do if she had "a problem" with a guard. Compl. ¶ 76. Correctional Officer Smith told Plaintiff that he did not want to be involved because he did not "want to have to come to court." Compl. ¶ 76. On May 7, 2015, Plaintiff made a written request to speak with a Lieutenant Rivers, the Internal Affairs Investigator for the BRRJA. Compl. ¶ 78. Correctional Officer Woody, received Plaintiff's written requests and indicated to Plaintiff that he did not want to pick up them up. Compl. ¶ 79- 80. Defendant FARRAR then confronted Plaintiff, informing her that Defendant WOODY did not want to turn the requests in to Lt. Rivers or send them up the chain of command. Compl. ¶ 81. Defendant FARRAR asked Plaintiff "are you trying to get away from me?" Compl. ¶ 82. Plaintiff, receiving no help from BRRJA employees, finally called the Prison Rape Elimination Act ("PREA") hotline and reported her sexual assaults. Compl. ¶ 83. Plaintiff then met with administrators for Defendant BRRJA at which time Plaintiff described her sexual assaults. Compl. ¶ 84-85. Plaintiff was transferred to the Amherst Adult Detention Center and an investigation was opened by the City of Lynchburg Police Department and BRRJA Internal

Affairs. Compl. ¶ 84-85.

During Defendant FARRAR's interview with the Lynchburg Police Department he admitted to having engaged in oral sex and vaginal intercourse with Plaintiff on at least two occasions. Compl. ¶ 86. Defendant FARRAR stated that he was aware of past instances at BRRJA involving correctional officers having sexual contact with inmates. Compl. ¶ 88.

The BRRJA had previously received a complaint about Defendant FARRAR from a female inmate, on December 23, 2014. Compl. ¶ 90. The previous female inmate complained that Defendant FARRAR had asked her to unzip her jacket and to show FARRAR the tattoo on her stomach, and that Defendant FARRAR made a remark about the inmate "flashing" him. Compl. ¶ 91. Additionally, this inmate complained that Defendant FARRAR told the inmate she owed the jail a fee of $1.00, and that FARRAR and the inmate could "take it out in trade." Compl. ¶ 92.

Plaintiff has alleged in her complaint that, employees of Defendant BRRJA were acting pursuant to longstanding practices or custom of the Defendant BRRJA to deprive her of her Eight Amendment rights. Compl. ¶ 117. Defendant BRRJA had actual and/or constructive knowledge the alleged deficient policies, practices and customs. Compl. ¶ 120. Despite this, the Defendant condoned, tolerated and through its own actions or inactions ratified such policies. Compl. ¶ 120. Defendant acted with deliberate indifference to the foreseeable constitutional violation the Plaintiff suffered. Id. The policies, customs, and practices of Defendant BRRJA were the moving force behind Plaintiff's constitutional violations. Compl. ¶ 121.

## II. Legal Standard

Plaintiffs' burden at the pleading stage is only to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Meeting that burden

requires only that the Plaintiffs provide a "short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs simply must give Defendants "fair notice of what the . . . claim is and the grounds upon which it rests," so as to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes…" *Wiggins v. Queensberry*, 2016 WL 8504779, at *3 (E.D. Va. 2016). It is not the purpose of a motion to dismiss to decide the merits. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). To that end, a District Court must accept as true all of the factual allegations pled in the complaint and draw all reasonable inferences in favor of the plaintiff. *Wiggins*, 2016 WL 8504779 at *3 (quoting *E.I. du Pont de Nemours & Co. v. Kolon Industry Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). A complaint should be dismissed only when the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Chavez v. McIntyre,* 424 F. Supp. 2d 858, 860 (W.D. Va. 2006).

"The *Twombly* plausibility standard which applies to all civil actions, *see Iqbal,* 129 S.Ct. at 1953, does not prevent a plaintiff from "pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, *see, e.c., Boykin v. KeyCorp*, 521 F.3d 202, 215 (2nd Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible, *see Iqbal,* 129 S.Ct. at 1949." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2nd Cir. 2010).

As demonstrated in the Complaint at Law and below, Plaintiff has more than met her burden per this stage in the litigation. The Complaint at Law alleges facts that, if accepted as true, state a plausible claim for relief against Defendant BRRJA for the misconduct alleged. For the reasons outlined in more detail below, the Defendant BRRJA's motion to dismiss must be

denied.

### III. Argument

#### a. Blue Ridge Regional Jail Authority can be held liable under Section 1983 through a *Monell* claim.

Local governments were intended to be included among the "persons" to which § 1983 applies when it is alleged that the entity unconstitutionally implements or executes a policy statement, ordinance, regulation, official decision, or custom. *Monell v. Dept. of Soc. Svcs.,* 436 U.S. 658, 659-691 (1978). Accordingly, the BRRJA can be sued under a § 1983 *Monell* claim such as that alleged by the Plaintiff.

Defendants cite to *pro se* cases brought by inmates under § 1983 for the contention that it cannot be sued. Not a single one of the cited *pro se* plaintiffs alleged *Monell* claims. Defendant goes as far to cite to *Sprinkle v. Blue Ridge Reg'l Jail Auth.* to demonstrate the that Plaintiff had clearly not alleged the count in order to go after Blue Ridge. 201 U.S. Dist. LEXIS 72718, *1 (W.D. Va. 2013). Defendant BRRJA's contention simply ignores the logic of *Monell v. Dept. of Soc. Svcs.* Although Defendant BRRJA is correct in its assertion that it cannot be sued under Plaintiff's Count I, a § 1983 Claim for 8th Amendment violations, it would be an abrogation of *Monell* to forestall the Plaintiff from bringing suit under the claim of unconstitutional policy, custom or practice as it was meant to be used.

#### b. Plaintiff' has sufficiently pled a *Monell* claim against the Blue Ridge Regional Jail Authority.

Under *Monell* and its progeny, liability may be imposed directly on a municipal entity through § 1983 so long as it was the moving force behind the violation. *Monell v. Dept. of Soc. Svcs.,* 436 U.S. 658, 690-91 (1978). Plaintiff's Complaint properly alleges the BRRJA's policies,

practices and customs contributed to the sexual assaults of Plaintiff and were a moving force behind the constitutional violations she faced. To survive a motion to dismiss, a plaintiff need not plead "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Here, Plaintiff pleads more than enough facts to overcome the plausibility standard outlined in *Iqbal* and *Twombly*.

To bring a successful *Monell* claim, a plaintiff must plead that a municipality maintained (1) a widespread custom, policy, and/or practice (2) that caused a constitutional violation. *Monell v. Dept. of Soc. Svcs.,* 436 U.S. 658, 694 (1978). It is well established that Defendants are liable under § 1983 for constitutional torts that are in compliance with their customs, practices or procedures. *Monell v. Dept. of Soc. Svcs.,* 436 U.S. 658 (1978). This is true regardless of whether the custom/policy has received formal approval through official decision making channels. *Id*. at 690-91. In this case, Plaintiff alleges that Defendant's policies, training, and supervision was so lacking that the logical result was the violation of her constitutional rights. In addition, Defendant's methods of maintaining inmate privacy, risk prevention and reporting incidents of sexual assault were a moving force behind the violations.

The 4th Circuit has found that a complaint may be "couched in general terms… [yet] contain sufficient factual content to survive a motion to dismiss. *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 404 (4th Cir. 2014) (citing *Haley v. City of Boston*, 677 F. Supp. 2d 379 (D. Mass. 2009)). In *Owens*, Plaintiff alleged "[Defendant] 'maintained a custom, policy, and/or practice' of condoning its police officers conduct in 'knowingly, consciously and repeatedly with[holding] and suppress[ing]' exculpatory evidence…a theory of custom by condonation.") …

[and] by failing to correct its officers' pervasive suppression of evidence, the [Defendant] injured him, committing an independent act that renders it liable under § 1983." *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 401 (4th Cir. 2014) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)).

Here, Plaintiff's complaint is replete with allegations that the BRRJA operated with customs and practices of inadequate training, supervision, and discipline. Compl. ¶ 117. Further Plaintiff's complaint alleges the inadequacy of the BRRJA's training and supervision caused Plaintiff's injury. Compl. ¶ 117-118(c)-(d), (f), (k). The allegations contained within Plaintiff's complaint are more than sufficient to establish facial plausibility for a *Monell* violation.

### i. Plaintiff has specifically alleged numerous policies, practices, and customs which were the moving force behind the violation of Plaintiff's constitutional rights.

The Fourth Circuit has itself reasoned that an "official policy" is unlikely to condone any misconduct that might result in a constitutional violation. *Spell v. McDaniel*, 824 F. 2d 1380, 1388 (4th Cir. 1987). As such, widespread custom that goes uncorrected by authority fulfills the governing policy requirements for a *Monell* violation if it is the moving force behind the constitutional violation. *Id.* at 1386. Widespread custom can further be present when a single decision by municipal policy makers results in an injury, under appropriate circumstances, this may result in a *Monell* violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). The authority must have actual or constructive knowledge of the custom. *Id.* at 1387. Constructive knowledge is present where "practices have been so widespread or flagrant that in the proper exercise of its official responsibilities to governing body should have known about them." *Id*. "A sufficiently close causal link between such a known but uncorrected custom or usage and a specific

violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Id.* at 1389.

Defendant incorrectly states that Plaintiff failed to provide facts to show any policy, custom, or practice was involved or caused a violation of Plaintiff's civil rights. Taking Plaintiff's well-pled facts as true for purposes of Defendant's Motion to Dismiss, Plaintiff sufficiently alleged numerous policies, customs, and practices of the BRRJA which contributed to the repeated violations of Plaintiff's constitutional rights. Plaintiff has pled that Defendant BRRJA had actual and/or constructive knowledge of its deficient policies, practices and customs which it condoned, tolerated and ratified. Compl. ¶ 119. Plaintiff has further pled that Defendant BRRJA acted with deliberate indifference to the foreseeable effects and consequences of its failure to train, supervise, discipline, or implement a warning system with respect to the constitutional rights of Plaintiff. Compl. ¶ 118 (j). Far from boilerplate or "scattershot" language alone, Plaintiff has pled fact-specific practices and customs of the BRRJA and their widespread nature, indicating that not only did the Defendant have knowledge of the customs/practices they failed to correct them resulting Plaintiff's injury.

> ## ii. Plaintiff has adequately alleged Defendant Blue Ridge Regional Jail Authority's specific failures to supervise officers that far exceed mere boilerplate language and in part, caused her sexual assaults.

Plaintiff specifically alleged that the custom and practice of not supervising officers was maintained by Defendant BRRJA in the following ways: permitting male officers to enter the cells of female inmates without supervision, including those with known histories of complaints by female inmates, Compl. ¶ 118(a)-(b); permitting correctional officers to access inmates' private medical files and provide medication to inmates for their own purposes, Compl. ¶ 118(e); failing to

properly supervise the inmates housed at the Lynchburg Adult Detention Center, Compl. ¶ 118(g); and, failing to properly supervise the correctional officers employed at the Lynchburg Adult Detention Center; Compl. ¶ 118(h).

"The way in which a municipal force is trained, including the design and implementation of training programs and the **follow-up supervision of trainees**, is necessarily a matter of policy within the meaning of *Monell*." *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). (emphasis added). Consequently a *Monell* violation occurs when failure to correct the known practices (whether actual or constructive knowledge as established above) "must be such as to make the specific violation 'almost bound to happen, [or happen] 'sooner than later'" *Id.* see *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985) (training so deficient that "police misconduct inevitably occurs."). In this instance, failure to supervise was bound to happen and did, resulting in the injury for Plaintiff.

In *Spell v. McDaniel*, 824 F.2d 1380, 1392 (4th Cir. 1987), the court found the following allegations sufficiently pled:

> Defendant officials [had] knowledge of repeated allegations of abusive and assaultive behavior toward . . . detainees and arrestees by [City] police officers . . . repeatedly fail[ed] to enforce established procedures to insure the safety of individual arrestees and detainees . . . failed to discipline police officers who had been found to have committed abusive and assaultive behavior toward . . . detainees and arresstees; fail[ed] and refuse[d] to competently investigate allegations of abuse and assault . . . by . . . police officers . . . covered up acts of misconduct and abuse of authority by individual police officers and officials . . . repeatedly failed to adequately supervise the actions of police officers and officials under their control and supervision.

Each of these allegations exemplifies various forms of failure to adequately supervise employees, leading to constitutional injury.

In the instant case, Plaintiff's contention that Defendant BRRJA had a practice and custom of not supervising their inmates or guards is clearly supported by the Complaint. Compl. ¶ 118 (g-

h). The widespread lack of supervision of male officers entering the cells of female inmates is clear. Before any incident had occurred with Plaintiff, Defendant Farrar was clearly not supervised, demonstrating the widespread nature of the lack of supervision. Plaintiff alleges that a previous complaint regarding Defendant Farrar asking a female inmate to unzip her clothing, making her inmate feel "terrified" and "vulnerable" was filed previous to Plaintiff's incident. Compl. ¶ 89-92. Even after this increased need for supervision, Defendant Farrar was allowed to enter female cells. Plaintiff was never protected or supervised from Defendant Farrar.

Plaintiff alleges that female inmates on suicide watch were given no more than a blanket to cover their bodies and guards could enter cells without any restriction. Compl. ¶ 19. Defendant Farrar allegedly entered Plaintiff's cell on several occasions and was not stopped, reprimanded, nor was a supervisor informed. Defendant Farrar was not stopped even when his visit was observed and the sounds of sexual activity were issuing from the cell. Compl. ¶ 41-47. Plaintiff alleges that the cell door remaining open for 9 minutes was electronically recorded, Compl. ¶ 41, and yet stricter supervision for Defendant Farrar or Plaintiff's cell was not implemented. This would reasonably infer that the practice of guards visiting female inmates alone is so pervasive that it was not reported. The supervision of the cells was so lax that Defendant Farrar was able to enter the cell a second time to assault Plaintiff. Compl. ¶ 59-60. Most indicative of the complete and utter lack of supervision in Plaintiff's allegations, is that an internal memorandum indicated that supervisors had been aware that guards were "holding 'long conversations'" with Plaintiff in her cell and did nothing to ensure such acts were supervised prior to the incidents of assault. Compl. ¶ 71.

Further demonstrating the lack of supervision is Plaintiff's contention that Defendant Farrar not supervised when he accessed Plaintiff's medical file to discover she suffered from a gastrointestinal tract disorder and required certain medications. Compl. ¶ 25-27. If Defendant Farrar had access to her file, there is no telling who else could have accessed private medical documents,

knowing such actions would not be subject to supervision. Defendant Farrar was not the only guard at BRRJA with access to Plaintiff's medical files. The lack of supervision regarding private medical information was so extensive that Defendant Farrar was able to bring Plaintiff her medication on a number of occasions, instead of a nurse. Compl. ¶ 30.

### iii. Plaintiff has adequately alleged that the shoddy training of officers was a moving force behind the constitutional violations experienced by Plaintiff.

Deficient training policies that result in deliberate indifference or reckless disregard for the constitutional rights of persons give rise to municipal liability. *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). Even if properly trained at the outset, employees, "may fall into patterns of unconstitutional conduct." *Id.* Should this conduct result in widespread custom, "such developed custom and usage may become the basis of municipal liability." *Id.* "Training policy deficiencies for which municipal liability may be imposed include not only express authorizations of specific unconstitutional conduct, but . . . failures adequately to prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty." *Id.*

Plaintiff specifically alleged customs and practices by the BRRJA of failing to properly train correctional officers regarding the following: not committing and preventing sexual assault or coercion by correctional officers against inmates to ensure inmate safety, Compl. ¶ 118(c); recognizing sexual assault or coercion by correctional officers against inmates to ensure inmate safety, Compl. ¶ 118(d); intervening when they were notified of sexual abuse and/or assault taking place at the Lynchburg Adult Detention Center, Compl. ¶ 118(k); and, understanding and recognizing consent and coercion, Compl. ¶ 118(f). Such failures to adequately train employees and prohibit or discourage this foreseeable conduct is in direct opposition with BRRJA publically disclosed standards of training.

BRRJA defines its standard of training as including: (1) Its zero-tolerance policy for sexual

abuse and sexual harassment; (2) how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures; (3) Inmates' right to be free from sexual abuse and sexual harassment; (4) the right of inmates and employees to be free from retaliation for reporting sexual abuse and sexual harassment; (5) the dynamics of sexual abuse and sexual harassment in confinement; (6) The common reactions of sexual abuse and sexual harassment victims; (7) How to detect and respond to signs of threatened and actual sexual abuse; (8) How to avoid inappropriate relationships with inmates; (9) How to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates; and (10) How to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities. PREA Audit: Auditor's Summary Report Adult Prisons & Jails, attached hereto as Ex. 1, 9. BRRJA confirms employee's understanding of the training and through employee signature. Ex. 1, 9. Defendants and other employees of the BRRJA, through their behaviors in the present matter, showed a clear lack of training on the above policy and that they had fallen into "patterns of unconstitutional conduct" such that they had developed a custom.

Additionally, BRRJA, in its 2015 PREA Audit Summary Report explains its policy and procedure to "enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia… Such policies and procedures require staff of the opposite sex to announce their presence when entering an inmate housing unit. Ex. 1, 6.

Plaintiff alleges that during her time on suicide watch Defendant FARRAR would withhold toilet tissue from Plaintiff unless she showed her body to him. Comp. ¶ 22. Further Defendant FARRAR would stand outside Plaintiff's cell repeatedly to watch her use the toilet after bring her

toilet tissue. Compl. ¶ 24. These actions are a clear violation of the BRRJA's publicly stated policies.

The clearest lack of training alleged by Plaintiff are the actions of Defendant BRRJA employee Defendant Farrar. Plaintiff alleges that Defendant Farrar coerced Plaintiff, committed acts of sexual assault against her on at least two occasions, and used his position as a guard to effect and hide his assaults. Compl. ¶¶ 35, 38, 48-51, 59-60, 67, 74, 81. Defendant Farrar's alleged statements that he engaged in "oral sex" and "intercourse" with Plaintiff and not "assault" or "taking advantage", demonstrates a clear lack of training in understanding the dynamics of consent and coercion within a prison facility.

Defendant Pitts' clearly alleged lack of training impeded him from preventing, recognizing or intervening in the sexual assault and use of coercion on Plaintiff. Plaintiff has alleged a number of clear signs of sexual assault and the use of coercion that were allegedly known to Defendant Pitts, including Defendant Farrar entering Plaintiff's cell alone when she was not dressed, Compl. ¶ 31, the cell door remaining open for nine minutes, Compl. ¶ 41, and sounds of sexual activity issuing from the cell, Compl. ¶ 42. Plaintiff has alleged Defendant Pitts had "snitched" on Defendant Farrar before but did not in this case. Compl. ¶ 53. Due to the policy and custom of the Defendant BRRJA, Defendant Pitts was untrained in investigating, preventing or intervening in what was being done to her.

The pervasive nature of the practice and custom of not training officers in the aforementioned areas is alleged clearly through the actions of the guards and supervisors that had knowledge of the incidents or that Plaintiff attempted to inform of her sexual assaults. Plaintiff has alleged that an internal memorandum was issued days after the rape of Plaintiff, warning officers against granting "special privileges" to Plaintiff and holding "long conversations" with her. Compl. ¶ 72. This

memorandum showed a clear lack of training in that it did not warn officers that such acts could be considered coercive and could be used to perpetrate sexual assaults. Other correctional officers rebuked Plaintiff's requests for assistance. Officer Smith did not assist Plaintiff after she informed her that she had a "problem with a guard". Compl. ¶ 76. Officer Smith did not investigate or ask more questions to determine if an issue of assault or coercion had occurred. Compl. ¶ 76. Plaintiff also alleged that written requests to speak to Lt. Rivers were made to Officer Woody who indicated he did not want to pick them up. Compl. ¶ 80. After Officer Woody received the requests, Defendant Farrar was made aware of the complaints and stopped them from going up the chain of command. Compl. ¶ 81. Officer Woody did not investigate or ask more questions to determine if an issue of assault or coercion had occurred. Compl. ¶ 79, 80-81. It was not until Plaintiff called the Prison Rape Elimination Act hotline herself that the investigation began. Compl. ¶ 83. Officers at the BRRJA had a clear lack of training to recognize coercion and assault, and do what they could to stop it.

### iv. Plaintiff has adequately pled the failure to discipline officers and failure to implement a warning system contributed as a moving force to the sexual assaults and constitutional violations of Plaintiff.

Plaintiff specifically alleged that the Defendant BRRJA maintained an unconstitutional custom and practice of failing to discipline officers who created threats to inmate safety, including threats of sexual assault, Compl. ¶ 117(i), and failing to implement a warning system to prevent sexual abuse and assault among correctional officers and inmates at the Lynchburg Adult Detention Center, Compl. ¶ 117(j).

In *Owens v. Balt. City State's Attys. Office*, the court accept Plaintiffs allegations of numerous report and unreported cases of official misconduct as "factual allegations, the veracity of which could plausibly support a *Monell* claim. 767 F.3d 379, 402 (4th Cir. 2014). Similarly, the

custom and practice of the BRRJA to find all prior incidences of sexual assault by prison guards as unfounded is a moving force behind the constitutional violations experienced by Plaintiff. The insidious nature of the lack of training is made clear by allegations of sexual assault predominantly considered "unfounded". Only in incredibly egregious cases, is anything done to put a stop to the actions. BRRJA's survey of sexual violence from 2012 to 2014 report 13 incidents of possible sexual assault or harassment by guard to an inmate. In all 13 instances BRRJA found each claim to unfounded or unsubstantiated. 2012-2014 Survey of Sexual Violence, attached hereto as Ex.2, 4, 11, 23. In 2013 alone, the jail received 8 of sexual misconduct between a staff and inmate and all were found to be unsubstantiated. Ex.2, 11. This information, in public record, supports Plaintiff's contention that a custom and practice of a lack of discipline for incidences of sexual assault are a moving forced behind her own sexual assaults.

     In the case at hand, Defendant Farrar had been cited in December of 2014 for requesting an inmate to unzip her clothing and "flash him". Compl. ¶ 90-91. If Defendant Farrar's unpunished use of coercion for sexual favors had been disciplined previously he could have been fired, punished, moved from night/suicide. Virginia PREA Operating Procedure, attached hereto as, Ex. 3, 4. watch where inmates only wore blankets or discouraged from trying such tactics again, potentially protecting Plaintiff. Plaintiff's allegations of Defendant Farrar's attitude of impunity create more than a reasonable inference that he had no fear of reprisal due to the custom and practice in place. Defendant Farrar's first potential discipline for assaulting Plaintiff was a memo warning not to give her "special privileges" or hold "long conversations with her, Compl. ¶72. Defendant Farrar repeatedly warned or threatened Plaintiff not to say anything or go anywhere because of his friends in other facilities, Compl. ¶ 73-74, and intervened in Plaintiff's attempt to seek help from Lt. Rivers. Compl. ¶ 81. The alleged environment of impunity made Plaintiff even

more vulnerable. Plaintiff has clearly alleged that the custom and practice of not disciplining officers has sufficiently provided basis for *Monell* liability.

Early warning systems are designed to identify potential problem officers. *Thompson v. City of Birmingham,* 5 F. Supp. 3d. 1304, 1320 (N.D. Ala. 2014). Early warning systems function as alerts to supervising authority to potential employee misconduct. *Mehr v. Atl. City*, 2014 U.S. Dist. LEXIS 121869, *34 (D.N.J. Sept. 2, 2014). Early warning systems are meant to put commanders on notice as to allegations of excessive force, and that they should be monitoring the behavior of the particular employee. *Id*. In *Mehr*, officers were flagged in the early warning system for excessive use of force. *Id.* The *Mehr* court found that a jury could infer from said warning system that an officer had a propensity for violence and subsequently should be monitored and that failure to investigate officers flagged by the warning system "displayed a deliberate indifference to the risk that its officers would use excessive force during the course of arrests." *Id.* at *34. Additionally, flagging officers in an early warning system results in actual or constructive knowledge of an officers propensity for violence when making an arrest. *Id.*at *35. With said knowledge, failure to investigate flagged officers shows deliberate indifference to the risk of constitutional injury. *Id.* Early warning systems are also effective tools to identify officers that require additional training, such without would result in continuous misconduct causing constitutional injury. *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ("Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations"). *Id.* at *38-39.

The very nature of finding all complaints for sexual misconduct unfounded undermines the Defendant BRRJA's ability to sustain a functioning early warning system for potential assaults. Plaintiff has clearly alleged that this culture exists, including Defendant Farrar. Moreover, the

aforementioned incidences wherein Plaintiff attempted to report her assault and was ignored allege the persistent lack of a warning system to punish past abuse and stop abuse in the future. Had an effective warning system been implemented and properly used by Defendant BRRJA, Defendant FARRAR may have received additional training regarding his misconduct, and prevented Plaintiff's constitutional injury.

### IV. Conclusion

For the reasons set forth above, Plaintiff, KATHERINE PAINTER, respectfully requests that this Honorable Court enter an order denying Defendants' 12(b)(1) and 12(b)(6) Motion to Dismiss or in the alternative, grant Plaintiffs leave to file an amended pleading.

Respectfully Submitted,

By: /s/ T. Vaden Warren, Jr.
T. Vaden Warren, Jr.
Attorney for the Plaintiff

T. Vaden Warren, Jr.
THE WARREN FIRM PLLC
516 Locust Ave.
Charlottesville, VA 22902
Tel: (434) 972-9090
Fax: (434) 972-9091
Email: vwarren@warren-law.com
VA Bar No.: 42004

By: /s Bhavani Raveendran
Bhavani K. Raveendran
Attorney for the Plaintiff

Bhavani K. Raveendran
ROMANUCCI & BLANDIN
321 N. Clark St.; Ste 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
Email: braveendran@rblaw.net
Attorney No.: 6309968/ Ill.

# CERTIFICATE OF SERVICE

  I do hereby certify that on this 23rd day of June, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jim H. Guynn, Jr. (VSB # 22299)
Guynn & Waddell, P.C.
Counsel for Defendant Officer Pitts
415 S. College Avenue
Salem, Virginia 24153
Phone: 540-387-2320
Fax: 540-389-2350
Email: jimg@guynnwaddell.com

Carlene Booth Johnson VSB No. 36473
Perry Law Firm
A Professional Corporation
Counsel for Defendant Blue Ridge Regional Jail Authority
262 Chellowe Road
Dillwyn, Virginia 23936
tel: (434) 983-5005
fax: (434) 983-5021
email: perrylawfirm@hughes.net

              By: /s/ T. Vaden Warren, Jr.

              T. Vaden Warren, Jr.
              Attorney for Plaintiff
              THE WARREN FIRM PLLC
              516 Locust Ave.
              Charlottesville, VA 22902
              Tel: (434) 972-9090
              Fax: (434) 972-9091
              Email: vwarren@warren-law.com
              VA Bar No.: 42004