CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/29/2017
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KATHERINE PAINTER,<br>                           *Plaintiff,*<br><br>v.<br><br>BLUE RIDGE REGIONAL JAIL AUTHORITY, ET AL.,<br>                           *Defendants.* | CASE NO. 6:17-CV-00034<br><br><br>MEMORANDUM OPINION<br><br><br><br>JUDGE NORMAN K. MOON |

Plaintiff Katherine Painter alleges that she was sexually assaulted by a guard while incarcerated at the Lynchburg Adult Detention Center. Plaintiff brings claims under the Eighth Amendment, through 42 U.S.C. § 1983, against: Corrections Officer Farrar, who allegedly committed the assault; Corrections Officer Pitts, who allegedly knew of the assault yet failed to intervene; and the Blue Ridge Regional Jail Authority ("BRRJA"), which allegedly had policies or customs which caused the assault.

Defendants Pitts and BRRJA have moved to dismiss the claims against them. Defendant Pitts' motion will be granted because Plaintiff has not asserted adequate factual allegations to support the legal conclusion that Pitts knew sexual assault was being committed. Thus, Pitts is entitled to qualified immunity on the basis that failing to intervene to prevent sexual acts (as opposed to sexual assault) between a guard and inmate is not a clearly established constitutional violation. Defendant BRRJA's motion will be granted because the BRRJA is not subject to suit under 42 U.S.C. § 1983.

## I. Facts as Alleged

Plaintiff Painter was an inmate at the Lynchburg Adult Detention Center, which is operated by Defendant BRRJA. (Dkt. 1 ¶¶ 16, 9). Defendant Timothy Farrar was a Corrections Officer who worked a night shift at the intake department of the Detention Center. (*Id.* ¶ 17). In this role, Farrar would threaten to take away Plaintiff's blanket and withhold snacks from her unless she showed him her naked body.[1] (*Id.* ¶¶ 21–22). Farrar would also stand outside Plaintiff's cell and watch her use the toilet. (*Id.* ¶ 23).

Farrar viewed Plaintiff's medical file and learned that she had a gastrointestinal disorder that required medication. (*Id.* ¶¶ 24, 26). Normally, this medication was brought by nursing staff. (*Id.* ¶ 25). On April 24, 2015, Plaintiff asked for medication to treat gastrointestinal pain, and it was brought to her by Farrar instead of the normal nursing staff. (*Id.* ¶¶ 28, 29). Farrar told Plaintiff he would not give her the medication unless she would perform oral sex on him. (*Id.* ¶ 31). After initially refusing, Plaintiff eventually agreed to do so because her gastrointestinal issues were so intense. (*Id.* ¶¶ 32–35). Plaintiff stopped performing oral sex because she began to feel very ill. (*Id.* ¶ 36). Records indicate that Plaintiff's cell door remained open for over nine minutes after Farrar initially entered. (*Id.* ¶ 40).

This incident was noticed by another defendant, Corrections Officer Pitts. Pitts was sitting at a nearby desk using a computer, and saw Farrar enter and exit Plaintiff's cell. (*Id.* ¶¶ 42, 43). Pitts raised his head and looked in the direction of Plaintiff's cell upon hearing a sexually suggestive noise coming from the cell. (*Id.* ¶ 44). Another inmate in a nearby cell, Jamarcus Butler, heard "lip smacking noises" coming from the cell while Farrar was inside. (*Id.*

---

[1]  In April of 2015, Plaintiff was placed on "suicide watch," which meant —among other things — that she was only given a blanket to wrap around her body and no additional garments. (Dkt. 1 ¶¶ 18, 19).

¶ 41). Butler confronted Farrar about what he heard, stating his belief that Farrar had engaged in sexual activity with Plaintiff and that Farrar "should be ashamed of himself." (*Id.* ¶48).

A second incident occurred on May 2, 2015. Farrar again entered Plaintiff's cell and threatened to withhold her gastrointestinal medication unless she performed oral sex on him. (*Id.* ¶ 56). When Plaintiff responded that she had had a dental procedure that same day, Farrar forced vaginal intercourse instead. (*Id.* ¶¶ 57–60). Approximately two days later, Farrar again approached Plaintiff about oral sex, but she refused. (*Id.* ¶ 68).

On May 5, 2015, a Sergeant Polk sent an internal memorandum stating that he was aware that intake officers had been granting "special privileges" to Plaintiff and having "long conversations" with her. (*Id.* ¶ 71). Farrar at several points intimated to Plaintiff that she would face reprisals if she reported any of his conduct to authorities. (*Id.* ¶¶ 72, 74). Despite these threats, Plaintiff reached out, both orally and in writing, to several other Correctional Officers about Farrar. (*Id.* ¶¶ 75, 77). These requests were either refused or ignored, and one request was shared with Farrar. (*Id.* ¶¶ 75, 79, 80).

On May 8, 2015, Plaintiff filed a complaint with the Prison Rape Elimination Act hotline to report the sexual assaults. (*Id.* ¶ 82). Three days later, Plaintiff was transferred to the Amherst Regional Jail Authority. (*Id.* ¶ 83). The Lynchburg Police Department opened an investigation into Plaintiff's allegations, and interviewed Farrar on May 13th. (*Id.* ¶¶ 84, 85).

Farrar admitted in the interview to having sexual relations with Plaintiff. (*Id.* ¶ 85). Farrar also stated that he knew of other corrections officers having sexual contact with inmates. (*Id.* ¶ 87). Another inmate had complained of a prior instance of sexual harassment with Farrar in December of 2014, alleging that he asked her to unzip her jacket to show him a tattoo on her stomach, as a form of "flashing." (*Id.* ¶¶ 89, 90).

## II. Standard of Review

"In ruling on a 12(b)(6) motion, a court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## III. Discussion

### a. Claim against Pitts

Plaintiff asserts a claim of bystander liability against Defendant Pitts on the basis that he knew of Farrar's unconstitutional sexual assault of Plaintiff, yet did nothing to intervene. (*See* dkt. 1 ¶¶ 102, 105, 106). In the Fourth Circuit, "an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002). The underlying rationale is that the bystanding officer "functionally participates in the unconstitutional act of his fellow officer," but only if he has "specific knowledge" of "his fellow officer's misconduct." *Id.* at 204 n.24.

4

The only disputed prong is the first one, whether Pitts had knowledge that Farrar was violating Plaintiff's constitutional rights, specifically her Eighth Amendment right to be free from cruel and unusual punishment. While the parties agree that the sexual assault of an inmate would be a violation of the Eighth Amendment, Pitts argues he could not have known that the sexual activity[2] occurring in Plaintiff's cell was nonconsensual sexual assault. Pitts asserts that the distinction between knowledge of nonconsensual and consensual sexual acts is important because only nonconsensual sex between a guard and a prisoner is a clearly established violation of the Eighth Amendment.[3] Plaintiff disputes both whether it is alleged that Pitts knew only of some (not necessarily nonconsensual) sexual act occurring, and whether consensual sexual relations between a guard and inmate represent a violation of the Eighth Amendment. Therefore, the Court must first determine whether the complaint adequately alleges that Plaintiff Defendant Pitts knew of Farrar's sexual assault of Plaintiff. If so, the inquiry ends there because that knowledge gives rise to a bystander liability claim. If not, the inquiry continues to whether *any* sexual act between a guard and prisoner is a clearly established constitutional violation such that Pitts would be liable for failing to intervene.

The relevant factual allegations regarding Pitts are that: (1) Pitts was seated near Plaintiff's cell during the events in question (dkt. 1 ¶ 42); (2) Pitts saw Farrar enter the door and

---

[2] Throughout this opinion, the Court often refers to "sexual acts" or "sexual activity" to denote sex for which the consensual status is unknown. This stands in contrast to "sexual assault" or "nonconsensual sex" for which the consensual status is known to be non-consent. The Court uses this terminology instead of referring to the alternative of "sexual assault" to be "consensual sex." Nothing in the allegations indicates that Pitts was aware of consensual sexual activity occurring in Plaintiff's cell. Rather, the issue is whether the consensual status was *unknown* to Pitts, or whether it was *known* to him to be nonconsensual sexual assault.

[3] The case law clearly supports the proposition that nonconsensual sex is a violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights.").

exit approximately nine minutes later (*id*. ¶ 45); (3) "lip smacking," noises emanated from Plaintiff's cell (*id*. ¶ 41); and (4) Pitts turned his head towards the cell upon hearing these sounds (*id*. ¶ 44). Additionally, inmate Jemarcus Butler was also close to Plaintiff's cell during the incident. After perceiving the same phenomena as Pitts observed, Butler confronted Farrar and: (1) stated "I know what you did over there;" (2) described the sounds as consistent with sexual activity; and (3) stated "You should be ashamed of yourself." (*Id*. ¶¶ 44, 48).

Given these factual allegations, the only inference that can be drawn is that Pitts was potentially aware of sexual activity occurring between Plaintiff and Farrar in Plaintiff's cell. Nothing in the alleged facts suggests that the phenomena observed by Pitts would have permitted him to differentiate between consensual and nonconsensual sexual activity in the cell. The fact that Pitts turned his head in response to potentially sexual noises could only have told him that some sexual activity was occurring. Similarly, any sexual activity between a prisoner and inmate, regardless of its consensual status, is something that Butler might reasonably have felt should cause Farrar to be "ashamed of himself." (Dkt. 1 ¶ 48).

While Plaintiff has certainly alleged that nonconsensual sexual activity occurred, she has not alleged facts which make it plausible that Pitts *knew* of its nonconsensual nature. It is not alleged, for instance, that Pitts knew anything about the coercive use of Plaintiff's medication, or that something in the sounds he heard indicated to him that he was hearing nonconsensual sexual activity. It simply does not follow that one who is aware of sounds and actions consistent with sexual activity is also necessarily aware of the nonconsensual nature of that activity. Without some factual support tending to show that the perceived sexual activity would also have been apparently nonconsensual to Pitts, Plaintiff does not adequately allege that Pitts was aware that the constitutional violation of sexual assault was occurring.

6

Given the conclusion that it can be reasonably inferred only that Pitts knew sexual activity was occurring between Plaintiff and Farrar, the Court must determine whether that knowledge is sufficient to state a claim for bystander liability. Generally, Pitts is entitled to qualified immunity in circumstances such as these unless the plaintiff demonstrates: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The Court has "discretion [to] decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, the analysis will begin and end with whether the right was "clearly established" at the time of the alleged violation. The Court is not aware of, nor has Plaintiff presented, any decision by the Supreme Court of the United States, the Fourth Circuit, or the Supreme Court of Virginia holding that consensual sex between a prison guard and an inmate is a constitutional violation. *See also Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *6 (W.D. Va. May 28, 2013) ("This circuit has not yet definitively addressed whether a prisoner can legally consent to a relationship with a correctional officer."); *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013) (holding that a party can show a right was clearly established by producing "a materially similar case decided by the Supreme Court, this Court, or the highest court of the relevant state"). And, while "a court does not need to find a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) (internal quotation marks omitted). Although other courts have suggested that it may be impossible for an inmate to consent to sex with a guard, such non-binding precedent would not have made it "clearly established" to a

reasonable official in the Fourth Circuit that *any* sexual activity between a guard and a prisoner was unconstitutional. *See, e.g. Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012) ("[T]he power dynamics between prisoners and guards make it difficult to discern consent from coercion."); *Lobozzo v. Colorado Dep't of Corr.*, 429 F. App'x 707, 711 (10th Cir. 2011) ("It is uncontested that Lobozzo, an inmate, could not legally consent to sexual activity with Martinez, a guard."). It follows that it was also not clearly established that Pitts' own conduct of failing to intervene to stop sexual activity was unconstitutional. Defendant Pitts, therefore, is entitled to qualified immunity and his motion to dismiss will be granted.

### b. Claim Against BRRJA.

Plaintiff asserts a claim against BRRJA under the theory established in *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). *Monell* holds that, while local governments may not be held liable for their employees' actions under a *respondeat superior* theory, they may nonetheless be liable under 42 U.S.C. § 1983 for their own customs or policies which cause a constitutional violation. *Monell*, 436 U.S. at 690–91.

A threshold question is whether Defendant BRRJA is subject to suit under 42 U.S.C. § 1983 at all. Because of Eleventh Amendment immunity, arms of a state government are not "persons" subject to § 1983 liability, while local governments and municipalities are. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Thus, the parties contest the nature of the BRRJA and whether it the BRRJA is the type of "person" subject to suit under § 1983.

The Court holds that BRRJA is not subject to suit under § 1983 because it is an arm of the Commonwealth of Virginia. It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. The Eastern District of Virginia applied this principle to hold that: "the level of state involvement in the regulation

and administration of local jails in Virginia indicates that the local jails are arms of the state for Eleventh Amendment purposes and thus not 'persons' under § 1983." *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 891–92 (E.D. Va. 1992). Other courts in Virginia have applied the principles in *Will* and *McCoy* to hold that the BRRJA is not subject to suit under 18 U.S.C § 1983. *Newman v. Blue Ridge Reg'l Jail Auth.*, No. CIV.A. 7:09-CV-00002, 2009 WL 1468807, at *1 (W.D. Va. May 21, 2009) ("Newman fails to state a claim against the Lynchburg Adult Detention Center and Blue Ridge Regional Jail Authority because these entities are not persons subject to suit under § 1983."); *Dammones v. Lynchburg Adult Det. Ctr.*, No. 7:12-CV-00515, 2012 WL 6566684, at *1 (W.D. Va. Dec. 17, 2012) ("Neither the Jail nor a group of persons, like the Blue Ridge Regional Jail Authorities, is a 'person' subject to 42 U.S.C. § 1983."); *Scott v. Blue Ridge Reg'l Jail Auth.*, No. 7:05-CV-00281, 2005 WL 2429759, at *1 (W.D. Va. Sept. 30, 2005) ("As a threshold matter, the Blue Ridge Regional Jail Authority is not a state actor subject to suit under § 1983."); *Sprinkle v. Blue Ridge Jail Auth.*, No. CIV A. 7:06CV00343, 2006 WL 1867332, at *1 (W.D. Va. June 30, 2006) ("However, because the Jail Authority is not a 'person' amenable to suit under § 1983, any claims against the Jail Authority must be dismissed.").

Plaintiff does not present a persuasive argument to counter the weight of precedent presented above. She asserts that barring a suit here would go against the Supreme Court's decision to permit the type of claim first authorized in *Monell*. However, while *Monell* creates a theory of liability against certain "persons" already subject to suit under § 1983, it does not expand the definition of "persons" under the statute. As Plaintiff's own brief admits, *Monell* claims are proper against a "local government" entity only. (Dkt. 19 at 6). Because the BRRJA is

an arm of the state and not a local government, it is not a person subject to suit under § 1983 and Plaintiff's claim against the BRRJA must be dismissed.

**IV.    Conclusion**

Both motions to dismiss before the Court will be granted. Defendant Pitts' motion will be granted because Plaintiff fails to allege sufficient facts to make it plausible that Pitts knew of Farrar's constitutional violation of sexual assault. Given that it can only be reasonably inferred that Pitts was aware of some, not necessarily nonconsensual, sexual activity, Pitts is entitled to qualified immunity. Defendant BRRJA's motion will be granted because the BRRJA is not a "person" subject to suit under 42 U.S.C. § 1983. An appropriate Order will issue.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this 29th day of August, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE