CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

7/31/2018
JULIA C. DUDLEY, CLERK
BY:  s/ CARMEN AMOS
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| KATHERINE PAINTER, | CASE NO. 6:17-cv-00034 |
| *Plaintiff,* | |
| v. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| BLUE RIDGE REGIONAL JAIL AUTHORITY, *ET AL.*, | JUDGE NORMAN K. MOON |
| *Defendants*. | |

Plaintiff Katherine Painter ("Plaintiff") has moved for default judgment against the lone remaining Defendant in this case, Timothy Farrar ("Defendant"). (Dkt. 42). Defendant previously worked as a correctional officer at the Blue Ridge Regional Jail. Plaintiff alleges that while she was at the jail he sexually assaulted and harassed her several times. She brings suit under 42 U.S.C. § 1983, seeking compensatory and punitive damages for injuries resulting from the sexual assaults. Defendant has failed to appear or defend the case in any way. In November 2017, the Clerk docketed an entry of default. (Dkt. 40). In late May 2018, the Court held an evidentiary hearing on damages. (Dkt. 57). Due to issues regarding notice, the Court withheld ruling on the motion for default judgment until now. Plaintiff's motion for default judgment will be granted, and damages will be awarded in the amount of $732,888.

## I.    Findings of Fact

1.    In the spring of 2015, Plaintiff, a 31 year old female, was imprisoned at the Lynchburg Adult Detention Center. (Compl. ¶ 16; H'rg Tr. at 8).[1]

---

[1]    Upon default, the plaintiff's factual allegations are accepted as true for all purposes, excluding the determination of damages. *See Ryan v. Homecomings Fin. Network,* 253 F.3d 778,

2. Defendant was an employee at the jail who worked the night shift in the "intake department." (Compl. at ¶ 17).

3. Shortly after her arrival, Plaintiff was placed on suicide watch. (Compl. at ¶ 18). Under this classification, she was prevented from wearing normal clothes. *Id*. at ¶ 19. Instead, she was given only a "suicide blanket" to cover herself and stay warm. *Id.*

4. On one occasion, Defendant threatened to take her blanket away from her. (Compl. at ¶ 20). Further, he would withhold toilet paper and snacks unless she revealed herself to him. *Id*. at ¶¶ 21, 22. He would also watch her use the bathroom from outside her cell. *Id*. at ¶ 23.

5. Plaintiff had a gastrointestinal ("GI") tract disorder, which Defendant knew about. He obtained access to her medication and then used it as a means to extort sexual favors. (Compl. at ¶¶ 24–31).

6. In April 2015, Defendant withheld Plaintiff's medication until she performed oral sex on him. (Compl. at ¶ 31). Due to her GI sickness and the need for her medication, she relented and performed oral sex on him. *Id*. at ¶¶ 31–39. She was in too much pain from her sickness and too afraid of the consequences to deny him. *Id*. at ¶ 39. Electronic records show that the door to her cell was open for nine minutes on the night of the incident. *Id*. at ¶ 40. Another correctional officer and an inmate in a neighboring cell overheard the sexual assault. *Id*. at ¶ 41–49.

7. After the incident, she felt upset, discouraged, drained, and "lesser of a person." (H'rg Tr. at 13).

---

780 (4th Cir. 2001) (citations omitted); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Facts pertaining to damages come from the Court's evidentiary hearing on May 9, 2018. (Dkt. 57). Citations to the transcript are to a provisional rough draft provided by the Court Reporter.

8.	In May 2015, Defendant again withheld Plaintiff's medication in exchange for sexual favors—this time engaging in forced vaginal intercourse. (Compl. at ¶¶ 59–61). She informed him that she could not perform oral sex, as he requested, because she had just had a dental procedure completed. *Id.* ¶¶ 56–57. He replied "that he was going to do 'something,' stood Plaintiff up, [] forcibly bent her body over a wooden bench in her cell," and raped her. *Id.* at ¶¶ 59–60.

9.	After the incident, Plaintiff felt discouraged, shame, and as though she had "no self-worth." (H'rg Tr. at 18). She cried herself to sleep that night because of the shame and the pain of experiencing such violence. *Id.* at 20.

10.	Plaintiff reported the incidents to another inmate, her mother, and her significant other at the time. (Compl. at ¶¶ 63–64, 70, 76). She received mental health counseling for the remainder of her time in jail. (H'rg Tr. at 21).

11.	As a result of the sexual assaults, Plaintiff suffers from post-traumatic stress disorder ("PTSD"), acute anxiety, and depression. (Compl. at ¶ 94; H'rg Tr. at 24). She has difficulty sleeping, out of fear of reliving the incident, and takes medication to go to sleep and deal with her depression. (H'rg Tr. at 23).

12.	Plaintiff currently receives drug addiction and behavioral counseling monthly at Horizon Behavioral Health Center from a nurse practitioner. (H'rg Tr. at 23).

13.	Plaintiff wants to attend a clinic to treat her PTSD, however the closest clinic is 50 miles away from her residence in Lynchburg. (H'rg Tr. at 25–26). Such treatment would occur weekly and cost upwards of $100 per visit. *Id.* at 26. Further, there are weekly group therapy sessions for women with PTSD that cost $30 per session. *Id.*

14.    Her PTSD also prevents her from enjoying time with her family. She no longer enjoys

outdoor activities such as picnics, swimming, or bike riding. (H'rg Tr. at 27).

15.    In April 2017, she filed suit against Defendant, pursuant to 42 U.S.C. § 1983, alleging

constitutional injuries under the Eighth Amendment of the U.S. Constitution. (Dkt. 1).

16.    In August 2017, she effectuated service by posting a copy of the summons and complaint

on the door of Defendant's usual place of abode. (Dkt. 32).

17.    In late May 2018, she mailed him notice of the complaint, the Clerk's entry of default,

and her motion for default judgment. (Dkt. 59).

18.    Defendant is not an infant, incompetent, or currently engaged in military service. (Dkt.

43-2 at ECF 2).

## II.    Conclusions of Law

"Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default

judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules."

*United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). In reviewing motions for default

judgment, courts have referred to the following factors:

> (1) when and against what party the default was entered; (2) identification of the
> pleading to which default was entered; (3) whether the defaulting party is an
> infant or incompetent person; (4) that the defendant is not in military services; and
> (5) that notice has been served on the defaulting party, if required by Fed. R. Civ.
> P. 55(b)(2).

*JTH Tax, Inc. v. Smith*, No. 2:06-CV-76, 2006 WL 1982762, at *1 (E.D. Va. June 23, 2006). The

Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be

avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory*

*Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Nevertheless, the entry

of default judgment is committed to the discretion of the trial court. *See Moradi*, 673 F.2d at 727

(citing *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)).

To begin, Defendant was served in August 2017, and he has failed to comply with his

duty to respond under the Federal Rules of Civil Procedure. *See* (Dkt. 32); Fed. R. Civ. P.

12(a)(1)(A). He has failed to appear, answer, or file a responsive pleading. In November 2017,

the Clerk docketed an entry of default against Defendant. (Dkt. 40). Plaintiff then moved for

default judgment, but had failed to comply with all the requirements under Federal Rule of Civil

Procedure 4(e)(1)(2)(B) and Va. Code § 8.01-296(2)(b). *See* Fed. R. Civ. P. 4(e)(1)(2)(B)

(permitting service of process by following the state law procedures where the district court is

located); Va. Code § 8.01-296(2)(b) (providing for "substituted service," when a defendant

cannot be found at his or her usual place of abode, by posting a process on the front door of the

defendant's abode). Under Va. Code § 8.01-296(2)(b), entering a default judgment is permitted

after "substituted service,"

> *provided* that not less than 10 days before judgment by default may be entered,
> the party causing service or his attorney or agent mails to the party served a copy
> of such process and thereafter files in the office of the clerk of the court a
> certificate of such mailing.

Va. Code § 8.01-296(2)(b) (emphasis added); *see, e.g., Hirsch v. Johnson*, No. 1:14-CV-332

JCC/MSN, 2015 WL 3537173, at \*1 (E.D. Va. June 4, 2015) (requiring the plaintiffs to comply

with Va. Code § 8.01-296(2)(b)'s mailing requirement before granting their motion for default

judgment). At the time of the evidentiary hearing, Plaintiff had not yet complied with this

mailing requirement. She has since mailed Defendant notice,[2] provided a "certificate of such

mailing" to the Court, and more than 10 days have passed. (Dkts. 59). Accordingly, notice has

---

[2] The notice included copies of Plaintiff's complaint, the Clerk's entry of default, and Plaintiff's motion for default judgment. (Dkts. 59-1).

been properly served on the Defendant under Va. Code § 8.01-296(2)(b). Further, Defendant is not an infant, incompetent, or currently engaged in military service. (Dkt. 43-2 at ECF 2). Thus, there is no apparent reason for Defendant's failure to respond. In short, Plaintiff has demonstrated that she is entitled to default judgment, and so her motion will be granted.

Although the Court finds that default judgment is appropriate, it does not automatically follow that Plaintiff is entitled to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001) ("The district court correctly concluded that acceptance of these undisputed facts [for the purposes of entry of default judgment] does not necessarily entitle the Appellants to the relief sought . . . ."). "If the court determines that Defendant is in default, a court may examine a plaintiff's complaint to determine whether it alleges a cause of action." *JTH Tax, Inc.*, 2006 WL 1982762, at *2. "[T]he appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 187 F.3d 628 (Table) (4th Cir. 1999) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)). Once the Court determines whether the Plaintiff alleges a cause of action, then the Court proceeds to a determination of damages. *Ryan*, 253 F.3d at 780–81. In a case such as this, where there is no sum certain, Rule 55(b)(2) provides that only after an evidentiary hearing can the Court award damages. *See Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006); Fed. R. Civ. P. 55(b)(2)(B) ("The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: . . . determine the amount of damages . . . .").

For the purposes of default judgment, the Court concludes Plaintiff has properly pled an Eighth Amendment violation. Under § 1983, a defendant acting under color of state law who

deprives a U.S. citizen of a right secured by the U.S. Constitution is liable for damages. 42 U.S.C. § 1983.

> It is well-established that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation. *See Woodford v. Ngo*, 548 U.S. 81, 118 (2006) (Stevens, J., dissenting) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights."); *Farmer*, 511 U.S. at 834 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." (internal quotation marks omitted)).

*Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016). Here, Defendant was employed by Blue Ridge Regional Jail Authority and acted under color of state law when he repeatedly and knowingly sexually assaulted Plaintiff. (Compl. ¶¶ 99, 101). These sexual assaults inflicted serious bodily harm and emotional distress on her. *Id.* at ¶¶ 103–104. Accordingly, the Court now turns to the appropriate relief requested in this case.

Plaintiff requests compensatory damages, punitive damages, and attorney's fees and costs under 42 U.S.C. § 1988. First, Plaintiff is entitled to compensatory damages. At the evidentiary hearing on damages, Plaintiff testified regarding her ongoing mental health issues, the emotional damages she has sustained, and the pain and suffering she endured as a result of the sexual assaults. (H'rg Tr. at 13, 20, 23, 27). Currently, Plaintiff only gets mental health treatment monthly by visiting a nurse practitioner at Horizon Behavioral Health Center. *Id.* at 23. Plaintiff specifically referenced the need for indefinite weekly therapy sessions to treat her PTSD and to improve and maintain her mental health. *Id.* at 23, 26. These weekly one-on-one sessions cost $100 each, in addition to weekly group therapy sessions which cost $30 each. *Id.* at 26. The closest PTSD treatment center is 50 miles away from her current residence. *Id.* at 25–26.

Attending these sessions for the rest of her life would cost $432,888.[3] *See Park v. Shiflett*, 250

F.3d 843, 854 (4th Cir. 2001) (upholding the district court's award of compensatory damages for

future medical costs under § 1983).

Plaintiff also testified in detail regarding the emotional damages she has sustained and the

pain and suffering she has experienced as a direct result of Defendant's sexual assaults. (H'rg Tr.

at 13, 20, 23, 27). She now struggles with PTSD, depression, and anxiety. *Id*. at 21, 23–24, 27.

She seeks $200,000 for these damages. The Court finds her requests for relief to be appropriate

in light of the graphic sexual assaults she endured and the specific physical injuries she

sustained. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) ("[A plaintiff] may not recover

for emotional or mental damages without a showing of a specific physical injury." (citing 42

U.S.C. § 1997e(e))); *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) ("[A]lleged sexual

assaults qualify as physical injuries as a matter of common sense."); *cf. Slicker v. Jackson*, 215

F.3d 1225, 1231 (11th Cir. 2000) ("Indeed, it is by now well settled that compensatory damages

may be awarded based on physical pain and suffering caused by a defendant's use of excessive

force, apart from any damages based on monetary loss.").

Accordingly, Plaintiff will be awarded $632,888 in total compensatory damages.

Second, Plaintiff is also entitled to punitive damages. The Court may "assess punitive

damages in an action under § 1983 when the defendant's conduct is shown to be motivated by

evil motive or intent, or when it involves reckless or callous indifference to the federally

---

[3]     Plaintiff is currently 31 years old with a life expectancy of 51 more years. *See Actuarial Life Table*, Social Security Administration, https://www.ssa.gov/OACT/STATS/table4c6.html (last visited July 24, 2018). Additionally, the IRS mileage rate for obtaining medical care is 18 cents per mile. *2018 Standard Mileage Rates*¸ Internal Revenue Service, https://www.irs.gov/pub/irs-drop/n-18-03.pdf (last visited July 31, 2018). "This court and numerous others routinely take judicial notice of information contained on state and federal government websites." *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Such damages are awarded for "outrageous conduct and to deter him and others like him from similar conduct in the future." *Id.* at 54. The Court strains to think of a clearer example demonstrating a "callous indifference" to a prisoner's Eighth Amendment rights than that of extorting sexual favors in exchange for medical treatment. *See, e.g., Carrington v. Easley*, No. 5:08-CT-3175-FL, 2011 WL 2132850, at *5 (E.D.N.C. May 25, 2011) ("There is no question that [the correctional officer's] actions in leading plaintiff to a small bathroom, forcing him to strip naked, and then . . . attempting to perform fellatio on him, demonstrated a reckless and callous disregard to plaintiff's rights under the Constitution and federal law."). Accordingly, Plaintiff will be awarded $100,000 in punitive damages.

### III. Conclusion

The Court will grant Plaintiff's motion for default judgment against Defendant Farrar. Judgment will be entered in her favor and she will be awarded $632,888 in compensatory damages and $100,000 in punitive damages. Upon Plaintiff's timely and proper motion the Court will award attorney's fees and costs.

The Clerk of the Court is hereby directed to send a certified copy of these findings of fact and conclusions of law and accompanying Order to all counsel of record.

Entered this __31st__ day of July, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE